UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOHNICE JACKSON *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-0138 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 54, 58 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

ADOPTING IN PART AND MODIFYING IN PART MAGISTRATE JUDGE FACCIOLA'S
REPORT AND RECOMMENDATION; GRANTING IN PART AND DENYING IN PART
THE DEFENDANT'S MOTION TO ALTER JUDGMENT

## I. INTRODUCTION

This matter is before the court on the defendant's objections to the Report and Recommendation issued by Magistrate Judge John M. Facciola, issued February 16, 2010, addressing the defendant's motion to alter a prior judgment of this court. The plaintiffs, who commenced actions under the Individuals with Disabilities Education and Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, moved for attorney's fees after prevailing in those proceedings. On March 26, 2009, this court, adopting in part and modifying in part a Report and Recommendation of Magistrate Judge Facciola ("the First Report"), awarded the plaintiffs $24,425 in attorney's fees. The defendant subsequently filed this motion to alter the award, which the court referred to Magistrate Judge Facciola for a Report and Recommendation ("the Second Report"). For the reasons discussed below, the court adopts in part and modifies in part the Second Report and grants in part and denies in part the defendant's motion to alter judgment.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs are thirty-two minor children, their guardians and court-appointed educational advocates. 2d Report at 1. The plaintiffs prevailed in thirty-six due process hearings and reached two settlement agreements with the defendant. *Id.* Following the due process hearings, the plaintiffs filed a petition for attorney's fees in the amount of $64,886 pursuant to Federal Rule of Civil Procedure 54(d), Local Civil Rule 54.2 and 20 U.S.C. § 1415(i)(3)(B). Pls.' Pet. for Atty's Fees ("Pls.' Pet.") at 1-2. The court then referred the plaintiffs' petition to Magistrate Judge Facciola for a Report and Recommendation on whether the plaintiffs were entitled to attorney's fees and, if so, the proper measure of such an award. 2d Report at 1-2.

On February 26, 2009, Magistrate Judge Facciola issued the First Report, recommending that the court grant in part and deny in part the plaintiffs' petition for fees. *Id.* The defendant objected to four aspects of the First Report: (1) the application of the *Laffey* Matrix[1] hourly rates as the measure of reasonable attorney's fees; (2) the awarding of fees for services performed by attorney Abdus-Shahid; (3) the awarding of fees for services performed by the individual identified as "JMS"; and (4) the awarding of fees for services performed by the educational advocate for plaintiff N.R. *See* Mem. Op. (Mar. 26, 2009) at 2. The court adopted in part and modified in part the First Report and awarded the plaintiffs $24,425 in attorney's fees. *See generally id.* Specifically, the court concluded that the *Laffey* Matrix provided an appropriate basis for assessing the reasonableness of the fees sought, reduced the recommended fee awards

---

[1] The *Laffey* Matrix is "a schedule of charges based on years of experience." *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995) (citing *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), *as modified by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988). The *Laffey* Matrix has been described as "a fee schedule of presumptively reasonable rates." *District of Columbia v. Jeppsen*, 2010 WL 638339, at *1 (D.D.C. Feb. 24, 2010).

for the services provided by attorney Abdus-Shahid[2] and the individual identified as "JMS"[3] and concluded that the education advocate for N.R. was not entitled to fees. *See generally id.*

On April 2, 2009, the defendant filed a motion to alter the court's ruling. *See generally* Def.'s Mot. to Alter J. The defendant asserted that the court erred by (1) applying the *Laffey* Matrix as the measure of reasonable attorney's fees in this case, (2) awarding any fees for the services performed by attorney Abdus-Shahid and (3) by awarding any fees for the services performed by the individual identified as "JMS." *See generally id.* The court referred the motion to Magistrate Judge Facciola for a Second Report and Recommendation, Minute Order (Apr. 2, 2009), which he issued on February 16, 2010, *see generally* 2d Report. The Second Report recommends that the court deny the defendant's motion in all respects. *See generally* 2d Report. The defendant promptly filed objections to the Second Report, asserting the same three errors raised in its motion to alter judgment. *See generally* Def.'s Objections to Feb. 16, 2010 Report & Recommendation ("Def.'s Objs."). The plaintiffs filed their response to the defendant's objections on March 8, 2010, *see generally* Pls.' Opp'n to Def.'s Objs. ("Pl.'s

---

[2] Magistrate Judge Facciola recommended a twenty-five percent rate reduction in the billing rate sought by Abdus-Shahid ($250 per hour) based on his failure to provide any supporting documentation concerning his professional experience or customary hourly rate. Mem. Op. (Mar. 26, 2009) at 5. The court held that the absence of supporting evidence warranted the application of the lowest billing rate in the *Laffey* Matrix ($185 or $195 per hour). *Id*. at 6 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)). Because, however, application of the lowest *Laffey* rate resulted in an award exceeding the $4,000 statutory cap, as did the application of a twenty-five percent reduction, the recovery remained unchanged. *Id.*

[3] Magistrate Judge Facciola recommended reducing the billing rate requested for work done by JMS ($150 per hour) to that of a paralegal under the *Laffey* Matrix ($110 per hour) based on the plaintiffs' failure to provide any supporting information regarding the experience or qualifications of that individual. 1st Report at 14. The court modified that recommendation by reducing by one-half the total hours claimed for work done by JMS and reducing the *Laffey* Matrix's paralegal rate by an additional twenty-five percent (to $82.50 per hour) based on the absence of supporting documentation demonstrating the reasonableness of the fee sought. Mem. Op. (Mar. 26, 2009) at 7.

Opp'n"), and the defendant filed a reply on March 15, 2010, *see generally* Def.'s Reply. With this matter now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for a Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within twenty-eight days of the entry of the judgment at issue. FED. R. CIV. P. 59(e). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone,* 76 F.3d at 1208). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier, *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

#### B. Legal Standard for Awarding Attorney's Fees and Costs under the IDEA

Federal Rule of Civil Procedure 54(d) requires a party seeking attorney's fees and "related non-taxable expenses" to file a motion with the court. FED. R. CIV. P. 54(d)(2). The

motion "must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award." *Id.* It must also state the amount or provide a fair amount of the award sought. *Id.*; *see also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorneys' fees" so long as they are the "prevailing party." 20 U.S.C. § 1415(i)(3)(B). A court's determination of the appropriate attorney's fees, in other words, is based on a two-step inquiry. First, the court must determine whether the party seeking attorney's fees is the prevailing party. *Id.* A prevailing party "is one who has been awarded some relief by a court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court must determine whether the attorney's fees sought are reasonable. 20 U.S.C. § 1415(i)(3)(B). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. Dist. of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context). The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

The plaintiff also bears the burden of establishing the reasonableness of the hourly rate sought. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). To meet this burden, the plaintiff must submit evidence on at least three fronts: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

"Once plaintiffs have provided such information, there is a presumption that the number of hours billed and the hourly rates are reasonable." *Blackman v. District of Columbia*, 2010 WL 9954, at *2 (D.D.C. Jan. 4, 2010). At that point, "the burden then shifts to the defendants to rebut plaintiffs' showing that the amount of time spent was reasonable and that the hourly rates for the attorneys who worked on the matter were reasonable, considering their various skill levels and experience for this kind of case." *Id.* (citing *Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004)).

### C. The Court Committed No Error in Applying the *Laffey* Matrix

The defendant argues that the court erred in relying on the *Laffey* Matrix because those rates apply only in the context of complex federal litigation and are therefore not an appropriate measure of prevailing rates in the context of IDEA administrative proceedings. *See* Def.'s Objs. at 10-14. The defendant points out that two judges in this district have rejected the application of *Laffey* rates for services rendered in connection with IDEA administrative proceedings. *Id.* at 10-11. The plaintiffs respond that most judges in this district have routinely held that the *Laffey* Matrix provides presumptively reasonable rates for legal fees incurred in connection with IDEA administrative proceedings. Pls.' Opp'n at 2-3.

This court expressly adopts and incorporates by reference herein Magistrate Judge Facciola's findings on this issue and concludes that the court committed no legal error in relying on the *Laffey* Matrix to determine the prevailing market rate. *See* 2d Report at 8-10. To these findings, the court adds only that numerous judges in this district have applied *Laffey* rates in the context of fee awards arising out of IDEA administrative proceedings. *See Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25-26 (D.D.C. 2004) (Huvelle, J.) (relying on the *Laffey* Matrix to determine the reasonableness of rates charged for legal services rendered in connection with IDEA administrative proceedings); *accord Brown v. Jordan P.C.S.*, 539 F. Supp. 2d 436, 438 (D.D.C. 2008) (Leon, J.); *Bush ex rel. A.H. v. District of Columbia*, 579 F. Supp. 2d 22, 27 (D.D.C. 2008) (Urbina, J.); *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 124 (D.D.C. 2004) (Collyer, J.); *Nesbit v. District of Columbia*, Civ. Action No. 01-2429 (D.D.C. Nov. 4, 2003) (Order) (Kessler, J.) at 1. Indeed, the argument that the defendant advances here – that IDEA litigation is not sufficiently complex so as to warrant application of the *Laffey* rates – has been squarely rejected by at least one other judge in this district. *See Nesbit*, Civ. Action No. 01-2429 (D.D.C. Nov. 4, 2003) (Order) at 1 (rejecting the defendant's contention that the "Plaintiffs should not receive the rate contained in the Laffey Matrix because IDEA litigation is not equivalent to complex federal civil rights litigation" because the court perceived "no reason to create an exception to use of the Laffey Matrix").

Although the defendant complains that this court failed to engage in "reasoned decision-making" in declining to distinguish the decisions on which the defendant relies, Def.'s Objs. at 11, the court reminds the defendant that these two district court decisions have no binding effect on this court, are contrary to the weight of the precedent and declined to address the decisions listed above, with which they are in conflict. *See generally A.C. ex rel. Clark v. District of*

7

*Columbia*, 2009 WL 4840939 (D.D.C. Dec. 15, 2009); *Agapito v. District of Columbia*, 525 F. Supp. 2d 150 (D.D.C. 2007). Furthermore, the court is not persuaded that IDEA administrative proceedings, which typically require testimony from education experts regarding whether a student has been denied a free and public education and the need for any compensatory educational services, are categorically less complex than other forms of litigation. *See M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425, 428 (D. Conn. 2008) (holding that a $375 per hour rate was reasonable "taking into account *the novelty and complexity of IDEA litigation*, the length of [the attorney's] involvement in [the] case, his undisputed expertise in this area of practice, and heeding the admonition of the Second Circuit that attorney's fees are to be awarded with an 'eye to moderation'") (emphasis added) (citing *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1139 (2d Cir. 1983)); *M.C. ex rel. S.C. v. Seattle Sch. Dist. No. 1*, 2005 WL 1111207, at *5 (W.D. Wash. May 9, 2005) (observing that "the statutory scheme of the IDEA mandates considerable pre-hearing consultation by its requirement that the parents, in conjunction with the District, develop an education program and placement plans which involve complex legal procedures and educational issues"); *see also Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 314 (2006) (Breyer, J., dissenting) (noting that "[i]n IDEA cases, experts are necessary"); *cf. Coleman v. District of Columbia*, 2007 WL 1307834, at *3 (D.D.C. May 3, 2007) (rejecting the defendant's assertion that a reduced billing rate should apply to counsel's efforts to recover attorney's fees because the defendant failed to show "that IDEA fee litigation, including fees-on-fees litigation, is less complex than other federal litigation in which the Laffey Matrix is used as evidence of prevailing rates for litigation counsel"). Indeed, given that *Laffey* rates are applied without controversy in connection with district court litigation resulting from IDEA administrative decisions, *see, e.g.*, *District of Columbia v. Jeppsen*, 2010

WL 638339, at *2 (D.D.C. Feb. 24, 2010) (applying the *Laffey* Matrix for fees incurred in connection with a declaratory judgment action challenging the results of an IDEA administrative proceeding), the court identifies no persuasive justification for applying a lower billing rate for the administrative proceedings underlying such litigation.

The defendant also faults the court for "ignoring" the fee schedule recently promulgated by the D.C. Public School System ("DCPS"), Def.'s Mot. to Alter J., Ex. B at 3, which, the defendant contends, represents a more accurate overview of the fees charged by attorneys litigating IDEA administrative actions, Def.'s Mot. to Alter J. at 8-9. Yet, the defendant declined to mention the DCPS fee schedule in its opposition to the plaintiffs' fee petition. *See generally* Def.'s Resp. to Pls.' Mot. for Atty's Fees ("Def.'s Resp."). Indeed, the first time the defendant advocated the application of the DCPS fee schedule was in its objection to the First Report, and even then, the defendant failed to offer any explanation as to how the DCPS derived the fee schedule and why it represented an accurate measure of prevailing market rates in the context of IDEA administrative proceedings.[4] *See* Def.'s Objs. to First Report at 4-5. Given the ample precedent for applying the *Laffey* Matrix rates in similar contexts, coupled with the defendant's failure to provide a supporting justification for the DCPS fee schedule, the court did not err in declining to adopt the DCPS fee schedule in its prior decision. Under these circumstances, the court declines to alter its prior ruling that the *Laffey* Matrix provides the prevailing market rate for legal services rendered in connection with IDEA administrative proceedings.

---

4     The only document submitted by the defendant that remotely touches on the accuracy of the DCPS fee schedule is the declaration of Quinne Lindsey-Harris, a supervising attorney in the DCPS Office of General Counsel, who relates the general billing patterns that she has observed in her experience reviewing IDEA fee applications. *See* Def.'s Mot. to Alter J., Ex. A ¶ 14. Yet Lindsey-Harris's declaration provides no indication of what the prevailing market rates are for attorneys possessing less than ten years experience or for paralegals. *See generally id.* Moreover, her observations of billing rates for experienced attorneys do not correspond with the rates set forth in the DCPS fee schedule. *Compare id. with* Def.'s Mot. to Alter J., Ex. B at 3.

### E. The Court Modifies Its Prior Ruling Regarding the Fees
### Sought by Attorney Abdus-Shahid

The defendant contends that even if the *Laffey* Matrix has some applicability in the IDEA context, the court erred in "mechanically" applying such rates to the fees sought by attorney Abdus-Shahid. Def.'s Objs. at 2-3, 5-9. The defendants note that the plaintiffs offered no information whatsoever concerning Abdus-Shahid's standard billing practices, legal experience or reputation, as necessary to establish the reasonableness of such rates in this case. *Id.* at 6. The plaintiffs respond that the court properly exercised its discretion in awarding a reduced fee award for services rendered by Abdus-Shahid. Pl.'s Opp'n at 2.

In its prior decision, the court noted that although there was a sufficient evidentiary basis for the legal work done by Abdus-Shahid, the plaintiff had failed to submit any information concerning Abdus-Shahid's qualifications or experience, as needed to establish the reasonableness of his requested billing rate of $250 per hour. *See* Mem. Op. (Mar. 26, 2009) at 5-6. Therefore, the court reduced Abdus-Shahid's billing rate to that of a first-year attorney under the *Laffey* Matrix. *Id.* Because the court is persuaded that it erred in awarding fees at this rate, it declines to adopt Magistrate Judge Facciola's Second Report with respect to this issue. *See* 2d Report at 3-6.

The court notes at the outset that the *Laffey* Matrix provides prevailing market rates based on an attorney's years of experience. *See* U.S. Atty's Office for D.C., *Laffey* Matrix 2003-2009, http://www.justice.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_7.html. Thus, to determine the prevailing market rate for an attorney of Abdus-Shahid's experience, it was necessary for the plaintiffs to supply information regarding his years of practice. *See id.* Because the plaintiffs failed to provide such information (and, indeed, still have not provided such information despite having had numerous opportunities to do so), the best that could be said

for attorney Abdus-Shahid is that his prevailing market rate was the lowest rate under the *Laffey* Matrix – that of an attorney with only one to three years of experience. *See id.* Ultimately, the court applied this rate in calculating the fee award for Abdus-Shahid. *See* Mem. Op. (Mar. 26, 2009) at 6.

Yet, as previously discussed, the prevailing market rate is but one of the elements needed to establish the reasonableness of a billing rate sought in a fee application. *See Covington*, 57 F.3d at 1107 (noting that in addition to the prevailing market rate, the claimant must submit information concerning the attorney's billing practices, as well as the attorney's skill, experience and reputation, to establish the reasonableness of the rates sought). Indeed, the prevailing rates set forth in the *Laffey* Matrix provide merely a starting point for determining the reasonableness of a billing rate. *See id.* at 1109 (observing that [a]lthough fee matrices are somewhat crude . . . [they] do provide a useful starting point); *Griffin v. Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 199 (D.D.C. 2001) (observing that "there is nothing automatic about the application of 'Laffey' rates" as such rates "are not like a GS schedule where government employees advance to the next step by virtue of time in grade" but, instead, represent an "attempt to reflect what the market will pay with the understanding that the market will pay more for lawyers who are experienced in complicated, federal litigation"); *see also Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 375 n.37 (D.D.C. 1983) (reducing one attorney's rates below the rate set forth in the matrix because his resume and supporting materials "[did] not reflect that level of superior achievement, expertise, skill and/or reputation that justifies the hourly rates awarded Plaintiffs' retained counsel" and noting that the court "cannot assume that these qualities are a natural function of the passage of time following law school graduation"), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984).

In this case, the plaintiffs offered no information concerning Abdus-Shahid's standard billing practices or his skill, experience or reputation so as to demonstrate that he is, in fact, entitled to the *Laffey* Matrix rate. *See generally* Pls.' Pet. Furthermore, the defendant has offered specific contrary evidence to rebut the appropriateness of applying the *Laffey* Matrix rate to Abdus-Shahid, including the fact that the two administrative proceedings for which Abdus-Shahid provided billing invoices settled before any hearing commenced and did not involve any pre-hearing discovery, the preparation of expert witnesses or any motion practice. *See* Def.'s Objs. at 7-8; *cf. Kaseman*, 329 F. Supp. 2d at 26 (observing that defendants may rebut the presumption of reasonableness of billing rates established by the plaintiffs through specific and contrary evidence demonstrating that a lower rate would be appropriate) (citing *Covington*, 57 F.3d at 1110-11). Under these circumstances, the court is persuaded that it erred in awarding fees for Abdus-Shahid at the full *Laffey* rate.

At the same time, the court rejects the defendant's assertion that the court must deny any award for Abdus-Shahid's work based on the plaintiffs' failure to establish the reasonableness of the fees sought. *See* Def.'s Objs. at 7-9. This Circuit has expressly approved the reduction of requested fees for attorney who have "submitted nothing" to support the reasonableness of their billing rates. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (noting that because the statutory cap reduced the attorney's rates well over twenty-five percent, it was unnecessary to further reduce the attorney's fees awarded to the plaintiff, who "submitted nothing to justify its attorneys' rates"); *see also Agapito*, 477 F. Supp. 2d at 118 (observing that in a case in which the attorneys offered no evidence regarding their general billing practice or the prevailing market rates and failed even to submit an affidavit detailing their experience and education, the court has discretion "to make a downward adjustment to account for the failure to

meet this burden") (citing *Role Models*, 353 F.3d at 970); *United States ex rel. Averback v. Pastor Med. Assocs.*, 224 F. Supp. 2d 342, 356 (D. Mass. 2002) (reducing the hourly rate sought in a fee application based on counsels' relative inexperience and "as a sanction for the complete and utter lack of evidentiary support underlying their claimed hourly rate" including the absence of "even the most basic evidentiary support in the form of sworn affidavits"). Indeed, the defendant acknowledged as much in its response to the plaintiffs' fee petition, asserting that "at a minimum, the court should reduce Mr. Abdus-Shahid's hourly billing rate by 25%, consistent with caselaw reducing unsupported billing rates of paralegals and law clerks."[5] Def.'s Resp. at 11 (citing *Role Models*, 353 F.3d at 970).

Thus, consistent with this precedent, the court reduces the billing rate sought by Abdus-Shahid to that of an inexperienced attorney under the *Laffey* Matrix based on the plaintiffs' failure to provide any information regarding where on the matrix Abdus-Shahid falls, and applies an additional twenty-five percent reduction to that rate based on the plaintiffs' failure to provide any documentation supporting the reasonableness of that rate as applied in this case.

### D. The Court Committed No Error in Awarding Fees for Services Performed by JMS

The defendant contends that the court erred in awarding any fees for services performed by the individual identified on the billing invoice as "JMS." Def.'s Objs. at 2-5. It notes that

---

[5] The defendant relies heavily on *In re North*, a decision in which the Circuit awarded no recovery based on the absence of any competent evidence of reasonableness in the fee application. 59 F.3d 184, 190 (D.C. Cir. 1995). Indeed, there is no question that under appropriate circumstances, courts may deny any recovery based on deficiencies in a fee petition. *See Agapito v. District of Columbia*, 477 F. Supp. 2d 103, 118 (D.D.C. 2007) (denying any fee recovery based on the absence of supporting documentation in the fee petition but noting that the court "has the discretion to take judicial notice of the reasonableness of the rates billed or to make a downward adjustment to account for the failure to meet this burden") (internal citations omitted). The court, however, sees no support for the defendant's contention that *North* stands for the proposition that the absence of evidence supporting the reasonableness of a billing rate categorically demands the outright rejection of the petition, particularly in light of the Circuit's subsequent ruling in *Role Models*. *See Role Models*, 353 F.3d at 970 (citing *North*, 59 F.3d at 189).

13

other than an invoice showing that JMS was billed out at $150 per hour, the plaintiffs failed to provide any information concerning JMS, declining even to disclose that individual's name. *Id.* at 3. The plaintiffs maintain that the court properly awarded a reduced fee amount based on their failure to properly support the fees assessed for services provided by JMS. Pl.'s Opp'n at 1.

This court expressly adopts and incorporates by reference herein Magistrate Judge Facciola's findings on this issue and concludes that the court committed no error in awarding the plaintiffs a reduced fee award for services provided by JMS. *See* 2d Report at 7. The court notes that this Circuit has expressly approved the practice of awarding reduced fees in circumstances in which a claimant has offered nothing to demonstrate the reasonableness of the fee sought for paralegal services:

> [The claimant] has the burden of justifying the rates at which these [law clerks and legal assistants] billed for their time, but it has submitted no information about the prevailing market rate for law clerks and legal assistants in the Washington area, nor has it referred to either of the two matrices that we have previously said litigants may rely upon when seeking fees. [The claimant] has not even taken the basic step of submitting an affidavit detailing the non-attorneys' experience and education. Because [the claimant] has justified neither the law clerk's nor the legal assistants' requested rates – and thus has failed to carry its burden – we will reduce those rates by twenty-five percent.

*Role Models*, 353 F.3d at 969-70 (internal citations omitted); *accord Lax v. District of Columbia*, 2006 WL 1980264, at *3 (D.D.C. July 12, 2006) (reducing the requested paralegal fees by twenty-five percent based on the plaintiff's failure to justify the rates at which the paralegals billed their time); *Czarniewy v. District of Columbia*, 2005 WL 692081, at *3 (D.D.C. Mar. 25, 2005) (applying a twenty-percent reduction to the requested fee for work done by paralegals because "the record [was] devoid of any information concerning the qualifications of these individuals"). Accordingly, the court's decision to apply an additional twenty-five percent reduction to JMS's billing rate (after first reducing that rate to bring it in line with the prevailing

market rate under the *Laffey* Matrix) finds ample support in existing precedent.[6] *See Role Models*, 353 F.3d at 969-70. The court therefore declines to alter its prior ruling on this issue.

## IV. CONCLUSION

For the foregoing reasons, the court adopts in part and modifies in part Magistrate Judge Facciola's Second Report and grants in part and denies in part the defendant's motion to alter judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of March, 2010.

RICARDO M. URBINA<br>
United States District Judge

---

[6] Although the defendant places great emphasis on the fact that the plaintiffs failed to disclose JMS's real name, *see* Def.'s Objs. at 3-5, the defendant fails to explain how this failure warrants the complete nullification of any fee award for this individual, given the clear authority authorizing the award of a reduced fee amount in the absence of any evidence supporting the reasonableness of the rate charged, *see Role Models*, 353 F.3d at 969-70; *Czarniewy v. District of Columbia*, 2005 WL 692081, at *3 (D.D.C. Mar. 25, 2005). Furthermore, although the defendant asserts that "it is not known whether 'JMS' is an attorney, paralegal, or law clerk or . . . Plaintiff's counsel's neighbor's 12-year-old child," Def.'s Objs. at 4, the aforementioned billing invoice reveals that JMS performed administrative tasks in furtherance of the plaintiffs' case, Pls.' Pet., Attach. A, Part V at 45-46, indicating that this individual was a paralegal or legal assistant, *see Czarniewy*, 2005 WL 692081, at *3 (awarding a reduced fee for individuals who were "apparently paralegals or legal assistants employed by plaintiffs' counsel" despite the defendant's argument that the record was devoid of any information concerning the qualifications of these individuals).